**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **PECO ENERGY COMPANY,** | **Civil Action** |
| *Plaintiff*, |  |
| *v.* | **No. 20-cv-4306** |
| **NATIONWIDE MUTUAL INSURANCE CO.** *et al.*, |  |
| *Defendants*. |  |

## <u>MEMORANDUM OPINION</u>

**GOLDBERG, J.**                                        **February 18, 2022**

This declaratory judgment action involves an insurance coverage dispute in which Plaintiff PECO Energy Company ("PECO") claims it is entitled to a defense as an additional insured under a liability insurance policy issued by Defendant Nationwide Mutual Insurance Company ("Nationwide") to Lentzcaping, Inc. ("Lentzcaping").[1] Before me are Nationwide's Motion for Judgment on the Pleadings and PECO's Motion for Summary Judgment. Each seeks a dispositive ruling on the issue of coverage. For the following reasons, I find that the undisputed facts show that PECO is entitled to a defense as an additional insured under Lentzcaping's policy. I will therefore deny Nationwide's motion, grant PECO's motion, and enter judgment in favor of PECO.[2]

---

[1] Lentzcaping is named as a party to this lawsuit but no claims are asserted by or against it.

[2] PECO does not contest Nationwide's Motion as to PECO's bad faith claim, and so I will enter judgment in favor of Nationwide on this claim.

1

I.    **FACTS**

A.    **The Policy**

Lentzcaping was insured under a commercial general liability (CGL) policy with Nationwide (the "Policy"). (Answer, Ex. A.) Lentzcaping's business is listed on the declarations page as "landscaping," and its insurance premium is calculated in part for work identified as "snow and ice removal—contractors." (Id. at PDF page 26.)

The Policy includes an endorsement naming PECO as an additional insured for some, but not all liability:

> **Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" [i.e., Lentzcaping's work] at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

(Id. at PDF page 199.) The "person(s) or organization(s)" shown in the schedule include PECO, and the covered locations include "all locations for which completed operations have been performed for the additional person(s) or organization(s)." (Id.)

B.    **The Claimed Loss**

Consuewella Dotson, who is not a party to this coverage litigation, filed a lawsuit against PECO for personal injury stemming from an alleged slip and fall at PECO's property.[3] See Dotson v. City of Philadelphia et al., November Term, 2018, No. 000176 (Ct. Com. Pl. Philadelphia). Dotson's Second Amended Complaint (the "Underlying Complaint") makes the following allegations pertinent to this coverage dispute:

- PECO owned and maintained the subject property. (Underlying Complaint ¶ 7.)

---

[3] Dotson was originally named as a party to this lawsuit but was dismissed for lack of prosecution.

2

- "[T]here existed a dangerous … condition of The Property including an area of cracked … sidewalk … where there was snow and/or ice that accumulated…." (Id. ¶ 8.)

- PECO "had … notice of the snow and/or ice … sufficiently in advance of the subject incident for [PECO] to have timely shoveled … said snow and/or ice[;] … however [PECO] … took no action whatsoever…." (Id. ¶ 13.)

- Dotson "was caused to fall onto the sidewalk at The Property as a direct result of the said Fall Down Hazard." (Id. ¶ 15.)

- PECO "acted by and through [its] agents, servants, workmen and employees…." (Id. ¶ 16.)

Other than the reference to PECO's "agents, servants, workmen and employees," the Underlying Complaint does not name Lentzcaping as a defendant and includes no allegation regarding Lentzcaping's conduct nor the conduct of any snow removal contractor.

PECO now contends it is entitled to a defense in the Dotson lawsuit under the Policy. Nationwide disagrees and asserts PECO is not an additional insured with respect to the Dotson lawsuit.

## II.   LEGAL STANDARD

### A.   Judgment on the Pleadings

A motion under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings will be granted only if "the movant clearly establishes that no material issue of fact remains to be resolved and that [the movant] is entitled to judgment as a matter of law." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008). In deciding the motion, the court must accept the nonmoving party's factual allegations as true and view them in the light most favorable to the nonmoving party. Id. This is the same standard that applies to a Rule 12(b)(6) motion to dismiss. See Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).

"[I]n deciding a motion for judgment on the pleadings, a court may only consider the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly

authentic documents if the complainant's claims are based upon these documents." <u>Wolfington v. Reconstructive Orthopaedic Assocs. II PC</u>, 935 F.3d 187, 195 (3d Cir. 2019) (quotation marks omitted). In this case, I may consider the Policy attached to Nationwide's Answer because PECO's Complaint is based on this document and PECO does not challenge the document's authenticity.

### B.    Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if there is evidence from which a reasonable factfinder could return a verdict for the non-moving party, and a dispute is "material" if it might affect the outcome of the case under governing law. <u>Kaucher v. Cnty. of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the non-moving party. <u>Galena v. Leone</u>, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment. <u>Schaar v. Lehigh Valley Health Servs., Inc.</u>, 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing <u>Williams v. Borough of W. Chester, Pa.</u>, 891 F.2d 458, 461 (3d Cir. 1989)).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." <u>Id.</u> at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A).

## III.   <u>DISCUSSION</u>

PECO argues it is an additional insured under Lentzcaping's policy with respect to the Dotson lawsuit because the Underlying Complaint creates the potential that Lentzcaping was involved in Dotson's injury. Nationwide disagrees and asserts that the absence of any reference to Lentzcaping in the Underlying Complaint precludes PECO from taking advantage of the additional insured endorsement. Alternatively, Nationwide argues that judgment should be delayed to allow another insurance company, Greenwich Insurance Company ("Greenwich"), to be joined as an additional party.

For the reasons explained below, I agree with PECO that it is entitled to a defense as an additional insured under the Policy and disagree with Nationwide that Greenwich is a necessary party.[4]

### A.   **Whether Nationwide Had a Duty to Defend**

A liability insurance policy can give rise to two separate duties on the part of the insurer: a duty to defend the insured in a lawsuit (the "duty to defend") and a duty to indemnify the insured for liability incurred (the "duty to indemnify"). See <u>Kvaerner Metals Div. of Kvaerner U.S., Inc.</u>

---

[4] I need not address PECO's alternative arguments for coverage.

v. Com. Union Ins. Co., 908 A.2d 888, 896 (Pa. 2006). The duty to defend is broader than the duty to indemnify. Id. at n.7.

"Pennsylvania adheres to the 'four corners' rule …, under which an insurer's potential duty to defend is determined solely by the allegations of the complaint in the underlying action." Ramara, Inc. v. Westfield Ins. Co., 814 F.3d 660, 673 (3d Cir. 2016) (alterations and quotation marks omitted). To apply the four-corners rule, a court "compar[es] the four corners of the insurance contract to the four corners of the complaint." Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 541 (Pa. 2010). An insurer has a duty to defend "if the factual allegations of the [underlying] complaint on its face encompass an injury that is actually or potentially within the scope of the policy." Id. In making this determination, "the factual allegations of the underlying complaint … are to be taken as true and liberally construed in favor of the insured." Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999). "An insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy." Jerry's Sport Center, 2 A.3d at 541. "As long as the complaint 'might or might not' fall within the policy's coverage, the insurance company is obliged to defend." Id. "If coverage … depends upon the existence or nonexistence of undetermined facts outside the complaint, until the claim is narrowed to one patently outside the policy coverage, the insurer has a duty to defend claims against its insured." Stidham v. Millvale Sportsmen's Club, 618 A.2d 945, 953-54 (Pa. Super. Ct. 1992).

The case before me involves an application of the four-corners rule to an additional insured endorsement in which PECO's status as an insured turns on the conduct of a third party (Lentzcaping). Recognizing that the four-corners rule is difficult to apply in such cases, courts in

some states have allowed exceptions to the rule where an additional insured endorsement is involved and have permitted consideration of facts not in the underlying complaint. See Cont'l Cas. Co. v. Westfield Ins. Co., No. 16-cv-5299, 2017 WL 1477136, at *9 n.9 (E.D. Pa. Apr. 24, 2017) (noting cases). No authoritative Pennsylvania decision addresses whether Pennsylvania would permit a similar exception, but the Third Circuit has predicted it would not. See Ramara, 814 F.3d at 679 (applying a "strict interpretation of the four corners rule" to an additional insured endorsement). In other contexts, the Third Circuit has observed that Pennsylvania's four-corners rule admits "no exception." Lupu v. Loan City, LLC, 903 F.3d 382, 391 (3d Cir. 2018). I therefore conclude that I must apply the four-corners rule to the coverage question in this case.

Of the cases to have applied Pennsylvania's four-corners rule to an additional insured endorsement, only Ramara is precedential. In Ramara, a property owner sought coverage under an additional insured endorsement in an insurance policy issued to a subcontractor working at the property. 814 F.3d at 666-67. As here, the additional insured endorsement applied only where the injury was "caused, in whole or in part," by the subcontractor. Id. at 667. There was no allegation in the underlying complaint that the subcontractor was responsible for the injury, but there were allegations that the injured party was employed by the subcontractor and that the property owner "acted by and through its agents, servants and/or employees," "failed to adequately inspect and monitor the work performed," and was negligent for, among other reasons, failing to "hire competent contractors and subcontractors." Id. at 675-76. The Third Circuit therefore found the underlying complaint "rife with allegations" raising the potential that the subcontractor caused the injury in whole or in part. See id. at 675.[5]

---

[5] Nationwide argues that Ramara does not control, because, in Ramara, the primary insured was immune from suit under the Workers' Compensation Act. I agree that Ramara has numerous factual differences from the present case that limit its utility in evaluating whether the allegations

Numerous non-precedential decisions in both the federal and state courts have confronted similar fact patterns. See, e.g., Eastern, LLC v. Travelers Cas. Ins. Co. of Am., No. 19-cv-5283, 2020 WL 5534060 (E.D. Pa. Sept. 15, 2020); Cont'l Cas. Co. v. Westfield Ins. Co., No. 16-cv-5299, 2017 WL 1477136 (E.D. Pa. Apr. 24, 2017); Greenwich Ins. Co. v. BBU Servs., Inc., No. 12-cv-291, 2014 WL 7344060 (W.D. Pa. Dec. 23, 2014); Precision Underground Pipe Servs., Inc. v. Penn Nat'l Mut. Cas., No. 3663 EDA 2018, 2019 WL 6492951 (Pa. Super. Ct. Dec. 3, 2019); Burchick Const. Co. v. Harleysville Preferred Ins. Co., No. 1051 WDA 2012, 2014 WL 10965436 (Pa. Super. Ct. Mar. 10, 2014). These cases involved varying allegations in the respective underlying complaints and thus reached differing conclusions as to whether there was a "potential" that the primary insured was partly responsible for the injury. Compare Fireman's Fund, 2011 WL 2937421, at *4 (finding allegations of negligent "supervision" and acts through "agents" sufficient to implicate primary insured's involvement), with Eastern, 2020 WL 5534060, at *2 ("There is nothing within the four corners of [the underlying] complaint which alleges that injury resulted from the negligence of [the primary insured]….").

Two patterns can be gleaned from these decisions: (1) the duty to defend is triggered by something less than an explicit allegation of the primary insured's fault but more than mere silence, see Precision Underground, 2019 WL 6492951, at *6 ("[T]he fact that [the injured party] did not make any overt allegations of negligence or wrongdoing against [the primary insured] … does not foreclose [the insurer's] duty to defend."); and (2) the outcome in each case is closely tied to the particular allegations in the underlying complaint.

---

here trigger the duty to defend. However, Ramara also stated it was applying a "strict interpretation of the four corners rule," 814 F.3d at 679, and its articulation of that rule therefore applies to this case.

Accordingly, I must examine the particular allegations in Dotson's complaint and determine whether they "potentially" come within the language of the Policy—that is, whether Dotson's injury "might or might not" have been caused, in whole or in part, by Lentzcaping's work. The following facts derived from the Underlying Complaint are relevant: (1) PECO had notice of snow and ice on its property in time to remove it; and (2) PECO acted through its "agents, servants, workmen and employees." Assuming these facts to be true, there is a "potential" that Lentzcaping, PECO's "agent," negligently failed to perform snow and ice removal service it was insured to provide, at the property where it was insured to work. Although the inference is thin, the bar is exceedingly low in that it requires only the "possibility" that Lentzcaping "might or might not" have been involved. Jerry's Sport Center, 2 A.3d at 451. I therefore find that the above facts meet this standard and trigger Nationwide's duty to defend.

Nationwide argues that Dotson's allegation regarding PECO's "agents" cannot encompass Lentzcaping because an independent contractor is not an agent. However, this is not "clear from an examination of the allegations in the complaint." See Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1435 (3d Cir. 1994) ("[T]here are agent independent contractors…."); see also Restatement (Second) of Torts § 422 (1965) ("A possessor of land who entrusts to an independent contractor … work on the land … is subject to the same liability as though he had retained the work in his own hands…."). And the term "workman" does not have a commonly understood legal meaning that would exclude a snow-removal company hired to maintain the property. Given that "all doubts as to whether the claims may fall within the coverage of the policy [are] to be resolved in favor of the insured," ambiguity as to what Dotson meant by "agents" and "workmen" must be resolved in favor of PECO. Biborosch v. Transamerica Ins. Co.,

603 A.2d 1050, 1052 (Pa. Super. Ct. 1992);  Ramara, 814 F.3d at 675 n.11 (construing ambiguity about whether a "contractor" included a "subcontractor" in favor of the insured).

I therefore conclude that PECO was entitled to a defense as an additional insured under the Lentzcaping policy, and will grant PECO's Motion for Summary Judgment.[6]

### B.    Whether Greenwich is a Necessary Party

Nationwide argues, in the alternative, that judgment should not be entered for PECO because Greenwich, which Nationwide contends is a necessary party, is absent from the lawsuit. Specifically, Nationwide asserts Greenwich's policy may be primary to Nationwide's or may contain pro-rata sharing terms that negate or limit Nationwide's obligation to pay defense costs. Nationwide asks me to delay entering judgment so it can join Greenwich as an additional party.

A party who could be joined is a "necessary party" if, inter alia, "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(2)(A). The analysis is "limit[ed] … to whether the district court can grant complete relief to persons already named as parties to the action; what effect a decision may have on absent parties is immaterial." Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 313 (3d Cir. 2007). "[T]he possibility that potential claims for contribution and indemnification exist involving absent parties does not render those absent parties necessary or indispensable." Nat'l Liab. & Fire Ins. Co. v. Condran, No. 21-cv-95, 2021 WL 3884259, at *1 (E.D. Pa. Mar. 4, 2021).

---

[6] Nationwide suggests that other insurers may also have had a duty to defend the Dotson lawsuit and that Nationwide's liability for defense costs may be reduced by pro-rata sharing terms in the various policies. Because PECO is seeking only a declaration that the duty to defend was triggered, I will not decide this issue. I also need not and do not decide when Nationwide's duty to defend may have terminated. See J.J.D. Urethane Co. v. Westfield Ins. Co., No. 1440 EDA 2017, 2018 WL 796428, at *7 (Pa. Super. Ct. Feb. 9, 2018) ("[The insurer's] duty to defend lasts only until such time as the claims are confined to a recovery that the policy does not cover." (alterations and quotation marks omitted)).

I find that Greenwich's absence does not impede my ability to order "complete relief" among the parties, and, therefore, Greenwich is not a necessary party. Nationwide does not need Greenwich to be joined as a party merely to use Greenwich policy documents to argue its case. See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Essex Ins. Co., No. 13-cv-32, 2013 WL 6328792, at *8 (W.D. Pa. Dec. 5, 2013) (finding that the existence of a "condition precedent … [to] recovery" involving an absent insurer did not "require [the absent insurer's] presence"). Additionally, PECO is seeking only a declaration that the duty to defend was triggered, not reimbursement for any particular dollar value in defense costs. That declaration will not exclude the possibility that there may be additional insurers obligated to defend, nor will it determine the priority of coverage or quantify the contribution each insurer may owe under applicable pro-rata sharing terms. For this reason, I conclude there is no reason to delay entering judgment on the claims before me for Nationwide to add Greenwich as an additional party.

## IV.   **CONCLUSION**

For the reasons set out above, I will deny Nationwide's Motion for Judgment on the Pleadings, grant PECO's Motion for Summary Judgment, and enter judgment in favor of PECO.[7]

An appropriate order follows.

---

[7] As noted above, PECO does not challenge dismissal of its bad faith claim and so I will enter judgment in favor of Nationwide on this claim.